### In re LONG ISLAND R. CO.
No. 47970.

United States District Court
E. D. New York.
March 14, 1949.

See also 83 F.Supp. 974.

Conboy, Hewitt, O'Brien & Boardman, of New York City (John V. Hewitt, of New York City, of counsel), for Pennsylvania R. Co. and another.

Cravath, Swaine & Moore, of New York City (George S. Leonard, of New York City, of counsel), for Chemical Bank & Trust Co.

Milbank, Tweed, Hope & Hadley, of New York City (James G. Grady, of New York City, of counsel), for Chase Nat. Bank & Trust Co. as Trustee under Mortgage, etc.

Richard R. Bongartz, of New York City, for Debtor Long Island R. Co.

KENNEDY, District Judge.

On March 2, 1949, the debtor filed its petition under the provisions of section 77 of the Acts of Congress relating to Bankruptcy, title 11, U.S.C.A. chapter 8, section 205. On the same day I signed an order in conformity with the statute, directing that a public hearing be held on March 11, 1949. At the opening of the hearing I stated that the only question before the court at this time was the appointment of trustees. Several creditors noted appearances, and several other parties either filed or indicated an intention to file petitions of intervention. It became clear that the petitions of intervention had little, if any, relationship to the appointment of trustees, and, therefore, with the consent of counsel who appeared, I adjourned hearing on these matters until March 18, 1949.

Several persons made suggestions concerning the type and kind of trustees who should be appointed, and in at least four instances specific names were put forward.

It is quite clear to me that the continuance without interruption of service on the Long Island Rail Road is vital to the life of the community. It is also obvious that there is need for the services as trustee of some one skilled and experienced in the operation of railroads. At the hearing the debtor suggested the name of Mr. David E. Smucker, who is presently General Manager of the debtor. Only one other railroad operator was mentioned, namely, Colonel Sidney Bingham of the Board of Transportation of the City of New York.

Mr. Smucker has had a wealth of experience in connection with railroad operation. He is a graduate of Ohio State University with the degree of Bachelor of Science in Civil Engineering, and between 1929 and 1948 he occupied posts of importance either in the Pennsylvania Railroad or Long Island Rail Road. Between January 26, 1943, and March 1, 1948, he occupied successively the position of Superintendent of the Indianapolis Division of the Pennsylvania Railroad, and then of the Ft. Wayne Division and the Pittsburgh Division of the same railroad. On March 1, 1948, he was appointed General Manager of the Long Island Rail Road, and concerning his administration, the Public Service Commission of the State of New York, in an opinion filed February 28, 1949, had this to say: "Under recent direction, the Long Island has taken on a new life. New management has been brought in to live on Long Island and manage the road, not from Philadelphia, the headquarters of the Pennsylvania Railroad Company, but locally from Long Island. Improvement in service, and better morale among the employees of the company have been already noticeable. The handling of the road during the snow and sleet storms this winter has improved, and new snow fighting equipment has been provided."

When the Public Service Commission, in its opinion, speaks of "new management" it refers to Mr. Smucker.

Under these circumstances, and having in mind the pressing need for continuity of service, certainly pending reorganization, I feel that it is the part of wisdom to appoint Mr. Smucker a trustee, despite my great admiration for the record and reputation of Colonel Bingham.

Under the statute, such an appointment of a person connected with the management of the debtor necessitates the appointment of another trustee or trustees, not in any way affiliated with the debtor. And even were there no such provision in the statute, everything that I know personally about the situation, and everything that was said at the hearing, compels the conclusion that the appointment of a trustee or trustees representing the community is absolutely essential.

The situation of the Long Island Rail Road is, I think, unique. As the Public Service Commission said in the opinion which I have already mentioned: "The Long Island Rail Road is peculiar in its makeup, and in its traffic and other problems. Although it is normally thought of

as one railroad, it is one in name only. It has numerous branches, many of which almost require independent operation—Port Washington, Rockaway, Far Rockaway, Long Beach, and Port Jefferson branches, a Main line, a Montauk line, a line to Garden City and Hempstead, one to Oyster Bay, one to West Hempstead, and an Atlantic Avenue line between Jamaica and Flatbush Avenue, as well as a line used exclusively for freight, known as the Bay Ridge Division. On the so-called passenger branches, the great majority of passengers expect to board a train and to be taken to their destination without change."

At the hearing the County Attorney for the County of Nassau expressed very strongly the view that a trustee familiar with the transportation problems of that county should be appointed. I inquired of him whether he thought that the interests and needs of Nassau and Suffolk counties were identical. And while he said he thought there was substantial identity of interest, I am not at all persuaded that this is so. And a representative of the Suffolk commuters was very strongly of the opinion that one member of their committee should be appointed. It seems to me also that the requirements of the North Shore are different in kind from those of the South Shore.

Moreover, any reader of the newspapers in the metropolitan area must, by this time, be perfectly familiar with the widespread public dissatisfaction (whether well grounded or not) among Long Island commuters concerning the affiliation existing between the Long Island Rail Road and the Pennsylvania Railroad. And it is clear, to me at least, that the management, pending reorganization, should be such that the community as a whole will feel that its peculiar interests are in competent hands and will be taken into consideration at every stage of the proceeding.

I am perfectly well aware of the fact that the appointment of trustees will be ratified by the Interstate Commerce Commission, only as their services are necessary for the efficient conduct of the affairs of the debtor, including the operation of its property, during the proceedings. But I submit that this is one of those unusual cases where it is the part of wisdom to appoint

two trustees in addition to the operating trustee. It may, and doubtless will be thought in some quarters that such a course may not be conducive to economy, and in these proceedings economy is of paramount importance. However, this difficulty is more apparent than real: the Interstate Commerce Commission is charged by law with the duty to fix the maximum compensation of the trustees, and it can, and no doubt will, prevent any unnecessary expense by the exercise of this authority. It is perfectly possible, and I believe quite acceptable to all concerned, for the Commission to fix, as compensation for the public trustees, an amount no greater than would be allowed if only one additional trustee were appointed, and, under the circumstances here, the appointment of at least one additional trustee is a requirement of the statute. The best solution I can think of is to appoint, under these conditions, in addition to Mr. Smucker, a person who is intelligent, competent and experienced in the handling of problems of grave importance, financial and otherwise, and who, in addition to these qualities, is completely conversant with the needs of Nassau County; and also a person with the same qualities who thoroughly understands the situation of Suffolk County.

I have decided to appoint, in addition to Mr. Smucker, Mr. Hunter L. Delatour, who lives on the North Shore at Great Neck in Nassau County, and Mr. James D. Saver, who lives on the South Shore at Bayshore in Suffolk County.

Mr. Delatour an I were, until 1944, associated in the practice of law together for 20 years. He has been president of the Nassau County Bar Association and also of the Brooklyn Bar Association. He is presently a member of the Executive Committee of the State Bar Association. He has been a commuter for upwards of 20 years and is thoroughly familiar with that aspect of the situation. He has handled with success and distinction a number of involved estates, both in the bankruptcy court and in the surrogate's court. He has had a wealth of experience in the solution of problems requiring keen judgment and complete integrity. He has no affiliation whatever either with the debtor or with the Pennsylvania Railroad, and never has had

Mr. Saver was for 12 years an Assistant United States Attorney in the Eastern District of New York. He served as my assistant for five years of that period. In 1947 Attorney General Tom C. Clark appointed him to be First Assistant in the Criminal Division of the Department of Justice at Washington. Mr. Saver resigned this position early in 1948 and entered private practice. During the time he was in public office, both as Assistant United States Attorney and as First Assistant in the Criminal Division at Washington, Mr. Saver handled with great credit a series of very important litigations, principally in the tax field. He recovered very large amounts of money for the government. His work demanded and he displayed a thorough knowledge of complicated financial and accounting problems. Like Mr. Delatour, he has not and never had, any affiliation either with the debtor or with the Pennsylvania Railroad. Like Mr. Delatour, he has been a commuter for over 20 years.

Actually, there is no substitute for personal experience as a basis for the appraisement of character. I personally know that these men will bring to whatever problem is before them great talent and the ability to make wise and honest decisions. And in the particular case, I regard them as peculiarly fitted for an arduous and probably thankless task.

